

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

February 13, 2026

**BY ECF AND EMAIL**

The Honorable Nelson Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

     Re: *United States v. Derek Hasselbrink,* **24 Cr. 413 (NSR)**

Dear Judge Román:

  The Government respectfully submits this letter in advance of the sentencing of defendant Derek Hasselbrink scheduled for February 20, 2026, at 11:45 a.m. For the reasons outlined herein, a sentence at or near the top of the parties' Stipulated Guidelines range of 235 to 296 months' imprisonment, to be followed by a 15-year term of supervised release, would be sufficient, but not greater than necessary, to achieve the legitimate goals of sentencing. Specifically, as discussed below, the requested sentence is necessary to protect the public and appropriate given the seriousness of the defendant's offense conduct.

## Factual Background

**A.** **Offense Conduct**

  From April 2023 to July 2, 2023, Derek Hasselbrink, then a 47-year-old man and convicted sex offender, lied about his age and identity to enter into an unlawful romantic relationship with a 15-year-old girl ("Victim-1"), engaging in remote erotic conduct and traveling by car over 700 miles for the specific purpose of meeting Victim-1 in Dutchess County to engage in sexual activity. (Dkt. 28, Presentence Investigation Report, "PSR" ¶¶ 7-14.) After being caught in his car with Victim-1 and chased away by her brother, Hasselbrink continued this unlawful romantic relationship with Victim-1 until around the time of his arrest in February 2024. (*Id.* ¶¶ 7-9.)

  In April 2023, Hasselbrink met Victim-1 on Instagram and initiated conversation. (PSR ¶ 11(a).) After briefly communicating via Instagram, Hasselbrink and Victim-1 added each other on Snapchat—an application with auto-deleting messages and media—to communicate on that application instead. (*Id.*) The defendant told Victim-1 that he was a 19-year-old named "Derek Spear." (*Id.* ¶ 11(b).) Victim-1 told Hasselbrink that she was 15 years old, which was also stated in the public biography portion of her Instagram page. (*Id.*) After communicating for a short time, Hasselbrink and Victim-1 started "dating." (*Id.* ¶ 11(c).) Specifically, although they had not met

in person at the time, they considered themselves to be in a long-distance relationship with one another. (*Id.*)

Hasselbrink and Victim-1 exchanged hundreds of sexually explicit messages, including discussions of showering with one another via video calls and the defendant sending Victim-1 several pictures of an adult male penis, presumably his own. (PSR ¶ 8.) For example, on June 19, 2023, the defendant sent Victim-1 a text message stating: "I want to fuck your tight little pussy hard and deep and fast baby girl [heart emoji]". (*Id.* ¶ 12; *see also id.* ¶ 13 (sexually explicit conversations discussing, among other things, Hasselbrink's intention of driving to Victim-1 to have sex with her and impregnate her).)

Escalating his inappropriate conduct, Hasselbrink drove from Illinois to meet Victim-1 near her home in Dutchess County on July 2, 2023. (PSR ¶¶ 8, 11(d), 14.) When the defendant arrived outside Victim-1's residence, he parked in the lot outside and she met him in his vehicle. (*Id.* ¶¶ 8, 11(d), 14.) Shortly thereafter, Victim-1's brother walked out of their residence and chased Hasselbrink away after Victim-1 exited Hasselbrink's vehicle. (*Id.* ¶¶ 11(d), 14.) Later that same day, the defendant returned to the parking lot and Victim-1 met him again. (*Id.* ¶¶ 11(d), 14.) Victim-1 says the defendant tried to kiss her and gave her flowers during this second meeting. (*Id.* ¶¶ 11(d), 14.)

After the defendant's arrest in February 2024, law enforcement reviewed material extracted from his phone, which included hundreds of pictures of what appear to be young girls, including pictures that appear to be Victim-1 wearing clothing and hundreds of close-up pictures of vaginas. (PSR ¶ 9.) Hasselbrink had multiple social media accounts, including Telegram, Instagram and Snapchat, where he engaged or attempted to engage with multiple minors and often pretended to be a minor himself. (*Id.*) Hasselbrink used his cellphone to persuade Victim-1 to engage in sexual activity, as he received images of Victim-1 engaged in sexually explicit conduct; they would video chat, where Hasselbrink often exposed himself and masturbated, and Victim-1 pulled her pants down, exposing her vagina; and he sent Victim-1 images of an adult male penis, presumably his own. (*Id.* ¶ 14.)

Hasselbrink had a prior sex offense conviction at the time he first contacted Victim-1. He was convicted on October 25, 1999, in the Superior Court of California, County of Ventura, of Unlawful Sexual Intercourse with a Minor, in violation of California Penal Code Section 261.5(c), and sentenced principally to 2 years' imprisonment. (PSR ¶ 39.) Specifically, when Hasselbrink was 22 years old, he had sex with a 15-year-old girl, and they had a baby as a result. (*Id.*) Because of this 1999 conviction, the defendant is required to register as a sex offender. (*Id.*)

**B. The Federal Charges and the Guilty Plea**

On June 10, 2024, the Honorable Judith C. McCarthy issued a complaint charging the defendant with: (1) violating Title 18, United States Code, Section 2422 by using a facility of interstate commerce to coerce and entice 15-year-old Victim-1 to engage in sexual activity in violation of New York Penal Law; and (2) engaging in Count One while required to register as a sex offender. (Dkt. 1, the "Complaint.")

On July 2, 2024, the grand jury returned Indictment 24. Cr. 403 (NSR), charging the defendant with the same counts as the Complaint. (Dkt. 4, the "Indictment.")

On September 2, 2025, pursuant to a plea agreement with the Government (the "Plea Agreement"), the defendant appeared before Judge McCarthy and allocuted to his guilty conduct as charged in Count One of the Indictment. (PSR ¶ 1.) As stated in the Plea Agreement, the parties' Stipulated Guidelines Range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is 235 to 293 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment, based on a total offense level of 34 and a criminal history category of V.[1] (PSR ¶ 133.)

## C. The Presentence Report

The United States Probation Office ("Probation") calculates the applicable Guidelines in the PSR as 262 to 327 months' imprisonment, based on an offense level of 34 and a criminal history category of VI. (PSR ¶¶ 20-31, 54-56, 132.) Probation and the Plea Agreement both calculate the offense level of 34 in the same manner. (*See* footnote 1.) The criminal history calculation in the PSR differs from the Guidelines range set forth in the Plea Agreement, however, because Probation awarded additional criminal history points for a 2007 conviction and sentence for burglary; a 2012 conviction and sentence for theft; a 2014 conviction and sentence for burglary; a 2016 conviction and sentence for driving under the influence of alcohol; a 2015 conviction and sentence and 2016 resentencing for failure to comply with sex offender registration and being a persistent felony offender; a 2018 conviction and sentence for criminal abuse of a minor; a 2019 conviction and sentence for multiple burglary, theft, and attempted burglary charges and being a

---

[1] The Plea Agreement advised the defendant that U.S.S.G. § 2G1.3 applied to Count One of the Indictment and that, pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level was 28. The Plea Agreement calculated that, pursuant to U.S.S.G. § 2G1.3(b)(2), two levels were added because the defendant made a knowing misrepresentation about his identity to influence a minor to engage in prohibited sexual conduct and, pursuant to U.S.S.G. §2G1.3(b)(3), two levels were added because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct.

The Plea Agreement recognized that, assuming the defendant clearly demonstrated acceptance of responsibility through his allocution and subsequent conduct prior to the imposition of sentence, a three-level reduction would be warranted, pursuant to U.S.S.G. § 3El.l(a) and (b). Moreover, U.S.S.G. § 4B1.5(a) applied because the defendant's instant offense of conviction was a covered sex crime, U.S.S.G. § 4B1.1 (Career Offender) did not apply, and the defendant had committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction. Pursuant to U.S.S.G. § 4B1.5(a)(1), the offense level was the greater of the offense level determined under Chapters Two and Three of the Guidelines (here, 29); or the offense level from the table in U.S.S.G. § 4B1.5(a)(1)(B) decreased by the number of levels corresponding to any applicable adjustment from U.S.S.G. § 3E1.1 (here, 34). In accordance with the above, the offense level determined under Chapters Two and Three of the Guidelines was less than the offense from the table in 4B1.5(a)(1)(B). Accordingly, the Plea Agreement concluded that the applicable Guidelines offense level was 34.

persistent felony offender; and a 2024 conviction and sentence for criminal damage to property, (*see* PSR ¶¶ 45-53), which were not within the Government's understanding at the time of the Plea Agreement and therefore are not assessed criminal history points in the Plea Agreement (*see id.* ¶ 133).

The PSR also provides details with respect to Hasselbrink's prior sex offense conviction. (*See* PSR ¶ 39.) According to the PSR, this victim (who was 15 years old at the time she had sex with Hasselbrink) told police that she ended her relationship with the defendant after he was sent to prison, and upon Hasselbrink's release from prison he called this victim and threatened her life. (*Id.*) On one occasion, Hasselbrink followed this victim to a coffee shop and declared that he would "kill her and take the baby away," and later that same day he called her on the phone and threatened to "kill her by putting a bullet in her head!" (*Id.*) The following day, this victim found a threatening note on her front door, which read:

> YOU AND YOUR "FRIENDS" HAVE NOT SEEN THE LAST OF ME; I'LL BE BACK, <u>I PROMISE</u>!! PAY-BACK IS A BITCH!! YOU AND YOUR "FRIENDS" BETTER WATCH YOUR BACKS. WHEN YOU LEAST EXPECT IT!!!! I WILL GET <u>MY</u> SON FROM YOU, I PROMISE. YOU CAN RUN BUT YOU CAN'T HIDE. <u>DEREK</u>

(PSR ¶ 39; Exhibit 1, USAO_000133.) The defendant later spoke with police officers and disclaimed making death threats to this victim. (PSR ¶ 39.)

The details of the instant offense, combined with Hasselbrink's 18 prior criminal convictions and his arrests on at least 18 additional occasions for charges such as burglary, grand theft, criminal trespass, and failure to comply with sex offender registration, led Probation to conclude that a sentence of 240 months' imprisonment was necessary to incapacitate Hasselbrink and protect the community from him. (PSR at 41-43.)

### D.  **The Defendant's Sentencing Submission**

The defendant's sentencing submission asserts that he should receive the lowest possible, mandatory minimum sentence of ten years' incarceration because of his history and characteristics, including a challenging upbringing and psychological and substance abuse issues, his acceptance of responsibility, his remorse and correctional rehabilitation, and his purported low to moderate risk of reoffending. (*See* Dkt. 31, "Def. Mot.") The defendant "does not disagree with his Guidelines as calculated by Probation." (*Id.* at 8.)

## ARGUMENT

**The Court Should Impose a Sentence at or Near the Top of the Stipulated Guidelines Range**

The Government requests that this Court impose a sentence at or near the top of the parties' Stipulated Guidelines Range of 235 to 293 months' imprisonment to be followed by a 15-year term of supervised release. The requested sentence is necessary to protect the public from a dangerous predator and is appropriate given the seriousness of the defendant's offense conduct.

Although the Sentencing Guidelines are no longer mandatory, they still provide important guidance following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), as district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

   a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) to afford adequate deterrence to criminal conduct;
   c) to protect the public from further crimes of the defendant; and
   d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**1.  The Requested Sentence Will Reflect the Seriousness of the Offense Conduct**

The requested sentence will reflect the seriousness of the offense conduct. After scouring social media for minors, the defendant, then a 47-year-old sex offender, engaged in sexually explicit online communications with a 15-year-old girl. The conversations were graphic, with the defendant sending messages such as: "I want to fuck your tight little pussy hard and deep and fast baby girl [heart emoji]". (PSR ¶ 12; Complaint ¶ 12.) During one of the sexually explicit

exchanges, when asked "how would you have sex with me when we are so far apart," the defendant made his intentions clear: "I can always drive to you and see you whenever I want or whenever you want". (PSR ¶ 13; Complaint ¶ 13.)

Underscoring his clear recognition of the significance of his illegal conduct, Hasselbrink deleted content from his phone. (PSR ¶ 11(e).) Notwithstanding this recognition, he travelled hundreds of miles from Illinois to New York to follow through with his criminal plan to engage in sexual activity with a minor. (*Id.* ¶¶ 8, 11(d), 14.) Hasselbrink's plan to have sex with Victim-1 likely would have succeeded if Victim-1's brother did not identify the issue and chase Hasselbrink away. (*Id.* ¶¶ 11(d), 14.) Nevertheless, after being chased away by Victim-1's brother, Hasselbrink returned to give her flowers, and he continued this unlawful romantic relationship with Victim-1 until around the time of his arrest in February 2024. (*Id.* ¶¶ 7-9, 11(d).) During the seven months that followed Hasselbrink's trip to New York, he received images of Victim-1 engaged in sexually explicit conduct; he sent her images of an adult male penis; and they would video chat, where he exposed himself and masturbated, and she pulled her pants down, exposing her vagina. (*Id.* ¶ 14.)

2. **The Requested Sentence Will Provide Just Punishment and Protect the Public**

The requested sentence will provide just punishment and protect the public. The fact that Hasselbrink engaged in the instant criminal conduct after previously serving a prison sentence for having sex with another 15-year-old minor demonstrates his dangerousness and his inability to control his sexual appetite for children. The prior imprisonment obviously did not deter him. The fact that the instant offense occurred when Hasselbrink was 47 years old speaks volumes with respect to his disrespect for the law and his inability to control his desire to have sex with children.

The requested lengthy prison sentence is necessary to incapacitate Hasselbrink for a long time so that he cannot hurt another child. A Guidelines sentence is the lowest sentence that would be sufficient, but not greater than necessary, to comply with the 3553(a) factors. The defendant's sentencing submission incorrectly states that he would be at least 60 years old upon release if he were sentenced to only 10 years' incarceration.[2] (*See* Def. Mot. at 9.) Even if this were accurate, it is a sad fact that many defendants who sexually exploit children continue to engage in this criminal conduct well into their 60s. Accordingly, to help protect the community upon his release, the Government requests a 15-year term of supervised release.

3. **The Requested Sentence Will Reflect the Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The defense submission highlights various sympathetic aspects of Hasselbrink's background and underscores that he has expressed remorse for his conduct and has a favorable

---

[2] The 10-year sentence requested by the defendant would result in the defendant's release when he is approximately 56 years old. The math is as follows: A defendant generally earns credit ("good time") for 15% of the sentence. 85% of a 120-month sentence is 102 months. Hasselbrink has been incarcerated federally as of June 11, 2024 (approximately 20 months). Thus, assuming he earns full "good time" credit, a 10-year sentence would mean that he has 82 months left to serve. He is 49 years old now and would be out of prison at 56.

attitude toward treatment. (*See* Def. Mot. at 2-4, 6-7, 9.) While these facts are sympathetic and should be considered by this Court, they do not mitigate the danger that Hasselbrink poses to the community. It bears adding that some of Hasselbrink's statements to the Court highlight his lack of insight concerning his behavior. For example, in Hasselbrink's letter to the Court, he writes, "I thought we were friends" when explaining why he continued to communicate with Victim-1 for months after being chased away by her brother. (Dkt. 31-4 at 44.) This assertion is, of course, at odds with the fact that, during this time period, Hasselbrink received images of Victim-1 engaged in sexually explicit conduct; he sent her images of an adult male penis, presumably his own; and they would video chat, where he exposed himself and masturbated, and she pulled her pants down, exposing her vagina. (PSR ¶ 14.) This is simply not how friends communicate, and saying "I need friends my own age" completely ignores the sexual nature of the unlawful relationship.

Further, although the Government appreciates Hasselbrink's stated recognition of the need for treatment, no one can predict, with any degree of confidence, that Hasselbrink will adhere to a treatment program and that, after treatment, he will not pose a danger to children. Under the circumstances presented here, the requested sentence of 235 to 293 months' imprisonment to be followed by a 15-year term of supervised release is not greater than necessary.

4. **The Requested Sentence Will Provide Adequate Deterrence and Promote Respect for the Rule of Law**

In addition to protecting the public and providing just punishment, the requested sentence would send an important message of deterrence to Hasselbrink and others, underscoring that serious offense conduct will be met with serious consequences. Given that his prior incarceration did not deter him from hurting another child, it is clear that a lengthy term of prison is necessary here to deter Hasselbrink himself. Further, the requested sentence would also send an important message of general deterrence. Like other sentences that have been imposed in cases involving the sexual abuse of children, the requested lengthy sentence will send a powerful message of deterrence to all who prey on children. Indeed, many defendants in this Courthouse with *no* prior sexual offense convictions have received lengthy sentences following guilty pleas for sexual offenses against children. *See*, *e.g.*, *United States v. Stephen Brown*, 14 Cr. 659 (NSR) (288 months; guilty plea; no prior convictions); *United States v. Mueser*, 22 Cr. 308 (VB) (300 months; guilty plea; no prior convictions); *United States v. Jonathan Weiss*, 21 Cr. 449 (PMH) (300 months; guilty plea; no prior convictions); *United States v. Christopher Nunez*, 21 Cr. 646 (KMK) (320 months; guilty plea; no prior convictions); *United States v. James Early*, 18 Cr. 819 (KMK) (300 months; guilty plea; no prior convictions). The requested sentence in this case—a case involving a sex offender with a prior state conviction for having sex and impregnating a 15-year-old girl who, after serving a substantial term of imprisonment, went on to enter into another unlawful relationship with another 15-year-old girl and discuss his specific intention of having sex with her and impregnating her, and driving over 700 miles to do just that—will send an especially important message of deterrence to convicted offenders who consider engaging in repeat predatory conduct.

\* \* \* \* \*

**Restitution**

To date, the Government is not aware of a request by Victim-1 for restitution. If Victim-1 does not request restitution and make a submission that provides a basis for the Court to determine her losses, restitution cannot be awarded. *See* 18 U.S.C. §2259(b)(2)(A) (the Court "shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim").

**Conclusion**

For the foregoing reasons, the Government respectfully requests that this Court impose a sentence at or near the top of the Stipulated Guidelines Range of 235 to 293 months' imprisonment, to be followed by a 15-year term of supervised release.

Very truly yours,

JAY CLAYTON
United States Attorney

by: _____
Kingdar Prussien
Assistant United States Attorney
(646) 832-6812